IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ROJAS BUSCAGLIA, INART
CORP., INART SERVICES, INC.

Plaintiffs,

v.

MICHELE TABURNO VASARHELYI,
also known as MICHELE TABURNO
VASARELY,

Defendant.

CIVIL NO. 13-1766 (FAB)

## REPORT AND RECOMMENDATION

## INTRODUCTION

On October 9, 2013, Plaintiffs Luis Rojas Buscaglia ("Rojas"), Inart Corporation and Inart Services (collectively "Plaintiffs") filed the present case against Defendant Michelle Taburno Vasarely ("Defendant", or "Taburno") alleging causes of action for breach of contract, tortuous interference with several contracts, specific performance regarding production of certain certificates of authenticity, and for damages for breach of employment contract, defamation and damages to commercial reputation.   (Docket No. 1).   On November 14, 2013, Taburno answered the complaint, and together therewith, filed a Counter claim against all Plaintiffs, alleging violations to the civil Racketeer Influenced and Corrupt Organization ("RICO") statute (18 U.S.C. §§ 1961-1968) and bringing forth several state law claims for breach of several contracts, and damages flowing therefrom.   (Docket No. 35).

Before the Court now is Plaintiffs' Motion to Dismiss the Counterclaim (Docket No. 62) and Defendant's opposition thereto (Docket No. 100).   On February 4, 2014, the

presiding district judge referred this matter, as well as all further proceedings except the pretrial conference and the trial, to the undersigned (Docket No. 102).   For the following reasons, it is recommended that Plaintiffs' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

**STANDARD**

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009).  Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), however, a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." See, Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a  complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'")(*quoting* Twombly, 550 U.S. at 555).  Thus, a plaintiff is now required to present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; *see e.g.* Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly

Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 3

and Iqbal.   First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 129 S.Ct. at 1940. Yet, the court "need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) .

Under the second step of the inquiry, the Court must determine whether, based upon all assertions, that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 129 S.Ct. at 1950. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

As it pertains to civil RICO claims, in order to avert dismissal under Rule 12(b)(6), a complaint must, at a bare minimum, state facts sufficient to portray (I) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged. Miranda v. Ponce Federal Bank, 948 F.2d 41 (1st Cir. 1991).

## FACTS

In order to address the factual allegations of the Counterclaim in context, the Court will briefly address the allegations set forth in the Complaint.  Co-Plaintiff Rojas is a

businessman dedicated to the purchase and sale of art. Co-Plaintiffs Inart Corporation[1] and Inart Services are corporations dedicated to the brokerage of art, as well as consulting and event planning and coordination, with special emphasis on the works of the famous Hungarian-French artists Victor Vasarely ("Vasarely") and his son Yvaral. Defendant Taburno, a French citizen, collaborated with both men and was married to Yvaral until his death, and at that time, inherited a sizable and valuable art collection from both of them.

Plaintiffs allege that Rojas, Inart and Taburno entered into a commercial relationship in 2010, whereby Rojas and Inart would sell certain Vasarely pieces of art belonging to Taburno. From each sale, Taburno would receive her moneys, Inart/Rojas would receive a commission and Taburno would provide certificates of authenticity for the sold artwork. For this project, Taburno moved to Puerto Rico on a non-immigrant working visa, and became an employee of Inart Services. Plaintiff contends that he spent a substantial amount of time, effort and moneys in obtaining Defendant's visa, as well as launching a plan to market and sell the Vasarely pieces. According to Plaintiffs, the sales for Vasarely pieces totaled over $3 million dollars for the years 2011-2013, and Inart had additional interested parties ready to purchase other Vasarely pieces valued at over $2.5 million dollars for the remainder of 2013.

Plaintiffs aver that, contrary the their agreement and the contract signed, Taburno did not provide certificates of authenticity for some of the artwork sold, that she reduced

---

[1] The Court notes that the incorporation for this particular Plaintiff, Inart Corporation, was cancelled by the Puerto Rico Department of State in February of 2014.

the commissions on several pieces, and interfered with some of Inart's sales (by, for instance, changing the purchase price after an agreement had been reached and by contacting the buyer directly and instructing him to tender payment to her instead of Inart, so as to avoid paying Inart's commission). Plaintiffs claim these actions were all in violation of the contract, and they caused damages to Rojas and Inart's reputation. Inart and Rojas responded to this by requesting the Immigration and Naturalization Service to terminate Taburno's temporary non-immigrant visa status.

In Defendant Taburno's Counterclaim, she sets forth a long tale of her involvement with Plaintiff Rojas dating back to 1997. For purposes of this motion, it is enough that they were close and had a business (and possibly romantic) relationship, which ended poorly in 2006. At that time, Taburno was living in Chicago, through a visa obtained by Globart Corporation, another of Rojas' businesses.[2] Taburno alleges that Rojas controlled her life, as she was in a foreign country where she spoke little of the language and where she knew no one, that she was without a phone or social security card, that her money was in Globart's accounts, and her apartment and storage items were all in the names of Rojas, his family or Globart. She further alleges that Rojas used her to further a scheme to get a hold of her property and valuable art collection. Rojas and Taburno parted ways in 2006, but Rojas kept Taburno's money, her apartment and some of her paintings.

---

[2] Globart's incorporation was also cancelled by the Puerto Rico Department of State in April of 2014. Although Globart is mentioned in Defendant's Counterclaim, it was not a named Plaintiff in this case and has asserted no claims against Defendant.

<u>Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi</u>
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 6

---

In 2009, in furtherance of the scheme to get hold of Taburno's property and art, Rojas sued Taburno in the Puerto Rico's state court for the liquidation of community property resulting from an alleged affair between them.  The case was settled in 2010, with several agreements being signed, to wit: 1) that Taburno's Chicago condo would be sold and Taburno would get full proceeds of the sale; 2) that the monies from the sale of the art studio in Chicago would be split between them, with Rojas paying back taxes on the property for 2007-2008; and 3) that they would enter into a collaboration agreement, which was in fact signed between Taburno and Inart in September, 2010.  At that moment, Taburno was living in Chicago, but moved to Puerto Rico in May of 2012.

The Counterclaim alleges that Taburno delegated to Rojas all the shipping arrangements for her belongings to be sent in containers from Chicago to Puerto Rico, which carried valuable art, paintings and furniture.  Not all the containers arrived in Puerto Rico though, and what did arrive, Rojas put in a storage in his name, contrary to Taburno's instructions.  She further posits Rojas kept furniture, art, cars, the keys to her apartment and monies belonging to her, that he registered property and automobiles belonging to her in his name, that he failed to oversee her condominium remodeling project as agreed upon, and that he would show and sell her artwork to prospective buyers from the United States without her consent, and further, that he failed to pay her for such sales.  Since the art was sold without Taburno's permission, and Rojas refused to give Taburno her property, as outlined above, Taburno kept the certificates of authenticity of the sold pieces.

Although not a model of clarity, Defendant alleges in her Counterclaim violations to 18 U.S.C. § 1961, 18 U.S.C. §§ 1962 (a-d), retaliation under 18 U.S.C. § 1513, and several causes of action under Puerto Rico law for breach of contract, and damages.  Plaintiffs contend that the Counterclaim brought against them must be dismissed because Defendant's allegations : 1) fail to identify the members of the enterprise; 2) fail to plead with specificity the RICO predicate acts, including those related to mail and wire fraud; 3) fail to plead with specificity the pattern of racketeering activity; 4) fail to plead the damages with specificity; 5) Plaintiffs are both a defendant and the RICO enterprise and; 6) the state claims do not meet the Twombly standard.

## LEGAL ANALYSIS

At the outset, the Court notes that Plaintiffs have alleged that Defendant has not filed a RICO statement pursuant to the standing order for several judges in this District.  Since the presiding district judge for this case has no such requirement for RICO cases, this argument is inapposite.  As a second matter, the parties agree that the causes of action brought under 18 U.S.C. § 1513 cannot lie.  It is therefore recommended that these claims be **DISMISSED WITH PREJUDICE**.

### A.      General RICO Requirements.

Firstly, Defendant alleges in her Counterclaim a violation to 18 U.S.C. § 1961. This section, however, contains the definitions of the different terms used in the RICO statute. § 1961(1) lists conduct qualifying as a racketeering activity under said statute.  No violation of this section can therefore be alleged.

Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 8

In order to state a RICO claim, Defendant must plead four (4) core elements: 1) to acquire, control or conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity.  See, Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991); Sousa v. North Cent. Life Ins. Co., 910 F. Supp. 53, 55 (D.R.I. 1995).

In United States v. Turkette, 452 U.S. 580, 582 (1981), the Supreme Court spelled out the two (2) categories of associations that come within the purview of the "enterprise": it can encompass organizations such as corporations and partnerships, and other "legal entities", and can also apply to "any union or group of individuals associated in fact although not a legal entity."   In order to prosper under RICO, the existence of an "enterprise" and the connected "pattern of racketeering activity" must be proven.  The enterprise is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.  At least two acts of racketeering activity must occur within ten (10) years of each other to constitute a "pattern", the racketeering predicates must be related, and must amount to, or pose a threat of, continued criminal activity.  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**B.      18 U.S.C. § 1962 (a): Investment of Racketeering Income**.

18 U.S.C. § 1962 (a) states, in pertinent part, as follows:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the

> proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

This provision was primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering. See, 11 Cong.Rec. 35,199 (1970) (remarks of Rep. St. Germain) and 116 Cong.Rec. 607 (1970) (remarks of Sen. Byrd)).  In order to prosper under this section, a claimant must allege: (1) that the defendant has received money from a pattern of racketeering activity; (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce. Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 91-92 (1st Cir. 1995).

Unlike §1962 (c), liability under §1962 (a) does not hinge upon the person's operation or management of the enterprise.  Rather, the claimant must allege an injury resulting from the investment of the racketeering income, as well as an injury caused by the illegal predicate acts.  Glessner v. Kenny, 952 F.2d 702, 708 (3d Cir.1991); Banks v. Wolk, 918 F.2d 418, 421 (3d Cir.1990).  This is required because section 1962 (a) is directed specifically at the *use or investment* of racketeering income, and requires that a plaintiff's injury be caused by the use or investment of income in the enterprise.  See, Grider v. Texas Oil & Gas Corp., 868 F.2d 1147, 1149 (10th Cir. 1989) (recognizing that section 1962(a) "does not state that it is unlawful to receive racketeering income … [rather] the statute prohibits a person who has received such income from using or investing it in the proscribed manner"; *see also* Compagnie de Reassurance, 57 F.3d at 91; Lightening Lube,

Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993)("[T]he plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves.")

Therefore, under this section, it is not sufficient to allege injury flowing from the predicate acts of racketeering – a distinct injury from *the investment of the proceeds* must also be alleged. Here, defendant Taburno spells out a multitude of predicate acts which she alleges Plaintiffs illegally participated in. See, Docket No. 35, at §89. In a nutshell, Defendant avers that in the end, through the effected racketeering acts, Plaintiffs seek to profit from her artwork and wealth by selling off her pieces without her consent, that this has deprived her of her property and that this has caused her financial and property damages.[3] No other damages are alleged. Defendant Taburno therefore fails to allege an injury resulting from the investment of racketeering income that is separate and distinct from an injury caused by the alleged racketeering itself.

Accordingly, it is recommended that Taburno's cause of action pursuant to § 1962 (a) be **DISMISSED WITH PREJUDICE** against all Plaintiffs.

C.    18 U.S.C. § 1962 (b).

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or

---

[3] See, Docket No. 35, at §§84-85: "84. Inart, Inart Services and/or Globart Enterprises have a legitimate purpose. But, Rojas uses such business for his own criminal enterprise to pursue the illegal sale and misappropriation of Vasarely's artwork and assets. 85. Such enterprise begun in 2006, approximately, and has consisted of a well developed scam/fraud plan to deprive Vasarely of all her art work and belongings through extortion, fraud, and theft, thus affecting interstate commerce."

Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 11

control of any enterprise which is engaged in, or the activities
of which affect, interstate or foreign commerce.

Under § 1962 (b), Defendant must show that she was harmed by reason of Plaintiffs' acquisition or maintenance or control, of an enterprise, through a pattern of racketeering activity.  Like §1962 (a), however, this section requires that Defendant state allegations of harm distinct from the predicate acts.  See, *e.g.*, Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1231 (D.C. Cir. 1991) ("Plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962 (a) to show injury by reason of a § 1962(b) violation"); see also, Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996) (vacated and remanded on other grounds*) (quoting* Danielsen, 941 F.2d at 1231) and Old Time Enterprises, Inc. v. International Coffee Corp., 862 F.2d 1213, 1219 (5th Cir. 1989) (asserted claims under §§ 1962 (a) and (b) properly dismissed "where the complaint fails to identify and describe any proximate causal relationship between an acquisition of an interest in an enterprise, through a pattern of racketeering activity or with income derived therefrom, and the damages claimed by [plaintiff]").

Defendant's claims under this section suffer from the same infirmity as the previous section -- namely, she failed to allege an injury independent from that caused by the racketeering acts themselves.  The Counterclaim does not even attempt to allege any injury arising from the acquisition or maintenance of an enterprise, but instead, merely alleges

injuries indistinct from those arising from the commission of alleged predicate acts. Without a distinct "acquisition injury," Defendant's cause of action under this section cannot lie. See, Discon, 93 F.3d at 1063.

As such, it is recommended that Defendant's cause of action pursuant to § 1962 (b) be **DISMISSED WITH PREJUDICE** against all Plaintiffs.

**D.     18 U.S.C. § 1962 (c)**.

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Pursuant to the statutory definition described above, the Court finds that Defendant has validly alleged an enterprise that operated in interstate commerce.  She alleged that Rojas was associated with an enterprise, Inart Corporation, Inart Services and Globart, that engaged in interstate commerce by virtue of their selling activities with United States' buyers.  However, she also alleged that Inart Corporation, Inart Services (two Defendants in this case) and Globart were "associated in fact to form an enterprise under RICO".  See, Docket No. 35 at § 82.

The First Circuit has consistently interpreted the statutory requirement for section 1962(c) that a culpable person must be "employed by or associated with" the RICO enterprise as meaning that the same entity cannot do double duty as both the RICO defendant and the RICO enterprise.  See, Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 6 (1st Cir. 1990) ("[T]he unlawful enterprise itself cannot also be the person the

plaintiff charges with conducting it."); <u>Odishelidze v. Aetna Life & Casualty Co.</u>, 853 F.2d 21, 23 (1st Cir. 1988) (per curiam) ("[I]t is clear that under § 1962(c) the 'person' alleged to be engaged in a racketeering activity ... must be an entity distinct from the 'enterprise.' ") (footnote omitted); <u>Schofield v. First Commodity Corp.</u>, 793 F.2d 28, 29–30 (1st Cir. 1986) (identifying similar rulings in other circuits). Because the racketeer and the enterprise must be distinct, Defendant's claims against Inart and Inart Services cannot move forward under this section.

Turning now to the claims against the remaining co-Plaintiff, Rojas, the alleged racketeer (but not the enterprise), Defendant must then allege at least two (2) acts of racketeering activity, which must occur within ten (10) years of each other in order to constitute a pattern. The Supreme Court has construed the pattern element as additionally requiring a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." <u>H.J. Inc.</u>, 492 U.S. at 239.

Here, Defendant Taburno alleges she was injured by the several predicate acts, which the Court finds in the case at bar have more than adequately been pled. Specifically, Defendant Taburno has alleged violations to the following sections of 18 U.S.C. §1961 (1): a) section 659 - relating to theft from interstate shipment, when a 53' container with Taburno's belongings and artworks disappeared under Rojas' supervision in interstate shipment; b) sections 891 - 894 - relating to extortionate credit transactions, when Plaintiffs requested and obtained credit and financial transactions under their name by using Defendant's assets; c) section 1341 - relating to mail fraud, when the proceeds of a

fraudulently registered property under the name of Rojas were sent by mail to Puerto Rico; d) section 1343 - relating to wire fraud, when Plaintiffs used the phone, internet, email and fax in pursue of the sale of the unauthorized sales of Taburno's belongings; e) sections 1510 and 1511 - relating to obstruction of criminal investigations and state or local law enforcement, when Plaintiffs caused the Immigration and Naturalization Service to terminate Taburno's visa to force her to leave the country and forfeit her rights as a victim of Rojas' robbery; f) section 1951 - relating to interference with commerce, robbery, or extortion, when Taburno's art was sold and sent, on at least sixteen (16) occasions, overseas to the continental United States, without her authorization; g) section 1952 - relating to racketeering, when Rojas established a pattern of extortion and robbery to steal Taburno's money and artworks, as well as a fraud scheme to register Taburno's properties and belongings under Rojas' name; h) section 1957 - relating to engaging in monetary transactions in property derived from specified unlawful activity, when Plaintiffs used Taburno's funds to acquire properties in Chicago derived from their theft and extortion; i) sections 2314 and 2315 - relating to interstate transportation of stolen property, when at least one large robbed Taburno painting was shipped to the United States mainland by Plaintiffs; and j) fraud - when Plaintiffs registered Taburno's properties (car, real estate, and storage facilities) under Rojas' name and when they concealed the sale of Taburno's art and properties to retain the proceeds.

These claims far exceed the initial hurdle Defendant must surpass at this stage of the litigation in order to maintain her claims. The Court finds the predicate acts are related, as

Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 15

they all deal and were carried out in furtherance of acquiring/selling Vasarely's art and acquiring Taburno's art and monies.  Regarding the requirement of the threat of continued criminal activity, the Court finds the allegations are also enough to satisfy this prong, particularly in light of the extended period of time the allegations encompass, that is, since 2004.  See, Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992) (The acts must be similar, related, or encompass multiple criminal episodes over a significant period of time).   As Plaintiff Rojas still has many valuable pieces belonging to Defendant, the Court finds that a threat of continued criminal activity still exists.

In light of the above, it is recommended that the request to dismiss the §1962 (c) claims against co-Plaintiffs Inart Corporation and Inart Services be **GRANTED**, and the claims against these co-Plaintiffs be **DISMISSED WITH PREJUDICE**. It is further recommended that the request to dismiss the 1962 (c) claims against co-Plaintiff Rojas be **DENIED**.

**E.    18 U.S.C. § 1962 (d): Conspiracy**.

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

This section requires a party to plead that "the conspirators agreed to facilitate or 'further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" White v. Union Leader Corp., No. Civ. 00–122, 2001 WL 821527, at *7-8 (D.N.H. July 13, 2001)(collecting cases).  Defendant alleges that Plaintiffs conspired to violate sections 1962 (a), (b) and (c) and are therefore liable under section (d).

The First Circuit Court of Appeals has previously held that "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000)(*citing* Howard v. American Online, Inc., 20 F.3d 741, 751 (9th Cir. 2000) and Salinas v. United States, 522 U.S. 52, 65 (1997)). Because Defendant has failed to state a substantive RICO claim against all Plaintiffs under sections §§ 1962(a) and (b), they also fail here.

Regarding Defendant's allegations that Plaintiffs conspired to violate § 1962 (c), as previously discussed, the First Circuit has held that in pleading a claim under § 1962 (c), "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise." Miranda, 948 F.2d at 44-45. As applied to this particular section, the person/enterprise distinction arises from the long standing common law maxim that a person cannot conspire with himself. River City Markets, Inc., v. Fleming Foods West, Inc., 960 F.2d 1458, 1461 (9th Cir. 1992). Thus, for Plaintiffs to be held liable under §1962 (d) for conspiring to violate § 1962(c), Defendant must plead that Inart Corporations and Inart Services are separate from the alleged RICO enterprise. Defendant has not done so. ("Inart, Inart Services and/or Globart are associated in fact to form an enterprise under RICO"; see, Docket No. 35,  ¶ 82). Thus, the claims against Inart Corporation and Inart Services under this section must therefore be dismissed.

The claims against Rojas under this section, however, are a different matter. In Defendant's Counterclaim, she has pled, with sufficient particularity, a number of predicate

acts spanning a long period of time, from 2004 until today, and has described, in some detail[4], the acts that Rojas has conspired with the corporate defendants and others to perform and has performed to her detriment. At this stage, this is enough for these claims to survive against Plaintiff Rojas.

Accordingly, it is recommended that Plaintiffs' request to dismiss the claims brought under §1962(d) for conspiring to violate §§ 1962 (a) and (b) brought against Plaintiffs Inart Corporation, Inart Services and Luis Rojas be **GRANTED**, and these causes of action be **DISMISSED WITH PREJUDICE**. It is further recommend that the claims against co-Plaintiffs Inart Corporation and Inart Services for conspiracy to violate § 1962 (c) also be **DISMISSED WITH PREJUDICE**. Finally, since Defendant's claims brought against Plaintiff Rojas for conspiring to violate § 1962 (c) survive, it is recommended that the request to dismiss these claims against Rojas be **DENIED**.

### F.    RICO Damages.

Regarding the damages, Plaintiffs aver that the Counterclaim is "devoid of allegations relative to the actual financial losses" suffered by Defendant. The RICO statute provides that "any person injured in his business or property by reason of a [RICO] violation " may sue in federal court and may recover treble damages". 18 U.S.C. § 1964(c). Thus, in order to maintain a RICO action, a claimant must demonstrate damage to her business of property, "but for" causation and proximate causation with respect to the racketeering predicates. Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 112

---

[4]As outlined in the previous section.

S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." Id.

For now, the Court finds that Defendant Taburno has sufficiently pled her damages at this stage of the litigation inasmuch as she has alleged direct harm to her property stemming from the predicate acts stated in the Counterclaim. See, Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721 (8th Cir. 2004) (Claimant must suffer an injury to a tangible property interest, and it must be "by reason of" a RICO violation). However, the Court is mindful that its task at this stage "… is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003). Hence, dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.

At this stage, and without a developed record, the Court believes it is premature to decide that Defendant will not, under *any* set of circumstances, be able to prove her damages with the precision required by relevant case law. Hence, it is recommended that these claims not be dismissed a this stage. Defendant ultimately bears the burden of establishing each element of her RICO cause of action at trial, including causation, in order to be able to recover damages. The Court only holds that the Counterclaim should not be dismissed because a plausible claim for damages under this statute has been made.

On a final note, the Court must make mention of what has often been said about the statute at hand: "Civil RICO is an unusually potent weapon - the litigation equivalent of a thermonuclear device". <u>Miranda</u>, 948 F.2d at 44. The allegations in the case at bar, although lengthy and fact-specific, do not spell out a RICO violation in most of the instances, primarily because the law was incorrectly applied to the facts at hand. This is a difficult case, which has seen an unusually tortured inception primarily due to the unusual and oftentimes rocky relationship between the parties. The Court urges the parties to exercise civility and professionalism towards each other in the remainder of the case.

## G.    State Law Claims.

Regarding the remaining state law claims for breach of contract, the Court finds that they have been pled with sufficient particularity in order to surpass the motion to dismiss stage. In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable." <u>Ocasio-Hernández</u>, 640 F.3d at 12. The court must further assess if the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." <u>Id</u>. It requires enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible'." <u>Quirós v. Muñoz</u>, 670 F.Supp.2d 130, 131 (D. Puerto Rico 2009).

In the case at bar, Defendant Taburno has plead, with great specificity, facts which adequately meet the <u>Twombly</u> standard. Among the facts alleged are the following: Plaintiffs have denied her full payment of her art pursuant to the terms of the contract; failure to transfer to her certain items (goods, monies and other items) that rightfully and

contractually belonged to her; failure to care for her artwork; registering her containers in Plaintiffs' name, in contravention to her explicit instructions; theft of a container and its contents; and damages resulting from these actions. These are painstakingly described in fourteen (14) pages of the Counterclaim, in great detail.

On these facts, as alleged, the Court cannot find, as Plaintiffs allege, that these facts are "insufficient" to surpass the plausibility standard. If taken as true, as the Court must at this stage of the litigation, they are entirely plausible. The fact that Plaintiffs allege that some of the allegations contravene each other, particularly regarding the "ratifications" of the sales of the artwork, is a matter that is not properly resolved at the motion to dismiss stage, and is more geared to resolution on a fully developed record. In light thereof, the undersigned recommends that Plaintiffs' request to dismiss the state law non-RICO claims be **DENIED.**

## CONCLUSION

For the aforementioned reasons, the undersigned Magistrate Judge recommends that Plaintiffs' Motion to Dismiss (Docket No. 62) be **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  Causes of action brought under 18 U.S.C. § 1513 against all Plaintiffs (Inart Services, Inart Corporation and Rojas): that the Motion to Dismiss be **GRANTED** and these claims be **DISMISSED WITH PREJUDICE**, as agreed to by Defendant Taburno.

Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 21

2.   Causes of action under RICO against Plaintiffs Inart Corporation and Inart Services: that the Motion to Dismiss be **GRANTED** as to the claims under §§ 1962 (a), (b) and (c), as well as to the claims under §1962 (d) for conspiring to violate §§ 1962 (a), (b) and (c), and these claims be **DISMISSED WITH PREJUDICE**.

3.   Causes of action under RICO against Plaintiff Rojas: that the Motion to Dismiss be **GRANTED** as to the claims under §§ 1962 (a) and (b), as well as claims under §1962 (d) for conspiring to violate §§ 1962 (a) and (b), and these claims be **DISMISSED WITH PREJUDICE**.  It is further recommended that the Motion to Dismiss the claims under § 1962 (c) and the claims under § 1962 (d) for conspiring to violate §1962 (c) against Plaintiff Rojas be **DENIED** and these claims **NOT BE DISMISSED**.

4.   All state law claims against all Plaintiffs (Inart Services, Inart Corporation and Rojas): that the Motion to Dismiss be **DENIED** and these state claims **NOT BE DISMISSED.**

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation.  See also, Amended Local Rules.  Failure to file same within the specified

Luis Rojas-Buscaglia, et al V. Michele Taburno-Vasarhelyi
Civil No. 13-1766 (FAB)
Report and Recommendation
Page 22

time waives the right to appeal this order. <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143,

150–151(1st Cir. 1994); <u>United States v. Valencia</u>, 792 F.2d 4 (1st Cir. 1986) and <u>Paterson-</u>

<u>Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, on this 3rd day of July, 2014.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE