IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ROJAS-BUSCAGLIA, *et al.*,

**Plaintiffs,**

**v.**                                    **CIVIL NO.** 13-1766 (FAB)

MICHELE TABURNO-VASARELY,

**Defendant.**

MEMORANDUM AND ORDER

BESOSA, District Judge.

## I.   Procedural History

On July 3, 2014, United States Magistrate Judge Camille L. Velez-Rive issued a Report and Recommendation ("R&R") (Docket No. 190), recommending that the plaintiffs' motion to dismiss, (Docket No. 62), be granted in part and denied in part. Specifically, the magistrate judge recommends:

(1) that Defendant Taburno's counterclaims against all plaintiffs pursuant to 18 U.S.C. § 1513 be dismissed with prejudice;

(2) that Defendant Taburno's counterclaims against plaintiffs Inart Corporation and Inart Services pursuant to 18 U.S.C. § 1962 (a), (b), and (c), as well as § 1962 (d) for conspiring to violate §§ 1962 (a), (b), and (c), be dismissed with prejudice;

(3) that Defendant Taburno's counterclaims against plaintiff Rojas pursuant to 18 U.S.C. §§ 1962 (a) and (b), as well as § 1962 (d), for conspiring to violate § (a) and (b), be dismissed with prejudice;

(4) that Defendant Taburno's counterclaims against plaintiff Rojas pursuant to 18 U.S.C. § 1962(d), for conspiring to violate § 1962 (c), be allowed to survive plaintiffs' motion to dismiss; and

      (5) that all state law claims against all plaintiffs be
      allowed to survive plaintiffs' motion to dismiss.

(Docket No. 190 at p. 21.)  Defendant Taburno failed to file any objections to the R&R.  Accordingly, she has waived any objections to the magistrate judge's findings.  See Davet v. Maccorone, 973 F.2d 22, 31 (1st Cir. 1992) ("Failure to raise objections to the Report and Recommendation waives the party's right to review in the district court . . . .").  On July 22, 2014, plaintiffs filed an objection to the R&R, noting their disagreement with several of the magistrate judge's conclusions.  (Docket No. 207).  On August 4, 2014, defendant Taburno opposed plaintiffs' objections.  (Docket No. 213.)

## II.  Standard of Review

A district court may refer a pending dispositive motion to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Loc. R. 72(a).  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.  See 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Sylva v. Culebra Dive Shop, 389 F. Supp. 2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this rule precludes further

review.  <u>See</u> <u>Davet</u>, 973 F.2d at 31.  In conducting its review, the
Court is free to "accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate judge."
28 U.S.C. § 636 (a)(b)(1); <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d
245, 247 (1st Cir. 1985); <u>Alamo Rodriguez v. Pfizer Pharm., Inc.</u>,
286 F. Supp. 2d 144, 146 (D.P.R. 2003).  Furthermore, the Court may
accept those parts of the report and recommendation to which the
parties do not object.  <u>See</u> <u>Hernandez-Mejias v. Gen. Elec.</u>, 428
F.Supp.2d 4, 6 (D.P.R. 2005) (citing <u>Lacedra v. Donald W. Wyatt
Det. Facility</u>, 334 F.Supp.2d 114, 125-126 (D.R.I. 2004)).

**III. Discussion**

     Of plaintiffs' numerous objections to the R&R, only one even
approaches the appropriate level of development warranting district

court review:[1]  that the magistrate judge erred in denying plaintiff Rojas' motion to dismiss the 18 U.S.C. § 1962(c) and (d) claims against him.  (Docket No. 207 at pp. 7-8.)  Plaintiffs are

---

[1] Plaintiffs' arguments that there is no factual support for the R&R's conclusions (1) that the corporations participated in the alleged scheme, or (2) that plaintiff Rojas committed "any criminal activity," are merely reiterations of their arguments in their motion to dismiss.  (See Docket No. 62-1 at pp. 12-23.)  Where objections to an R&R are repetitive of the arguments already made to the magistrate judge, a de novo review is unwarranted. Westernbank P.R. v. Kachkar, 2009 U.S. Dist. LEXIS 78726, 25 (D.P.R. Sept. 1, 2009) (Delgado-Colon, J.).  "Instead, the report and recommendation is reviewed by the district judge for clear error." Rivera-Garcia, 2008 U.S. Dist. LEXIS 60305 (citing Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y 1992) ("It is improper for an objecting party to . . . submit[] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the [m]agistrate [j]udge.  Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a[n] R & R.")).  Having reviewed the R&R, the Court finds no clear error regarding those two conclusions.

Furthermore, "a district court need not consider frivolous, conclusive, or general objections." Espada-Santiago v. Hosp. Episcopal San Lucas, 2009 U.S. Dist. LEXIS 19840 *3, 2009 WL 702350 (D.P.R. 2009) (Delgado-Colon, J.) (citations omitted).  The Court finds the remaining objections filed by plaintiffs at the very least to be inadequately developed, general, or conclusory, and in some instances frivolous:  the magistrate judge "apparent[ly] conclu[ded]" that defendant Taburno inherited a sizable and valuable art collection from Victor and Yvaral Vassarely, but defendant Taburno cannot claim any ownership of those paintings, (Docket No. 207 at pp. 2, 7, 8); the magistrate judge should have included that defendant Taburno has provided no evidence regarding her current U.S.-immigration status, id. at p. 3; and the magistrate judge improperly concluded that defendant sufficiently alleged that an enterprise operates in interstate commerce because the alleged "predicate acts" in defendant Taburno's counterclaim amount to nothing more than "garden variety breach of contract claims," id. at pp. 3-4.

thus entitled to a *de novo* determination of that proposed recommendation. See <u>Sylva</u>, 389 F. Supp. 2d at 191.

**A.   R&R Analysis**

The magistrate judge began by properly setting forth the requirements of an 18 U.S.C. § 1962(c) claim in her R&R:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(Docket No. 190 at p. 12.) She then found that defendant Taburno validly alleged enterprises operating in interstate commerce[2] — Inart Corporation, Inart Services, and Globar — and with which plaintiff Rojas associated. <u>Id.</u> Rojas, as the racketeer, allegedly engaged in "several predicate acts," which the magistrate judge and this Court find to be more than adequately plead. <u>Id.</u> at p. 13 (setting forth ten acts that qualify as "racketeering activity" and violations of 18 U.S.C. § 1961(1)).

The magistrate judge also properly conveyed the additional requirement to a RICO claim set forth by the Supreme Court: the "continuity plus relationship" standard. (Docket No. 190 at p. 13) (citing <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989)). Pursuant to that standard, the

---

[2] The corporations "engaged in interstate commerce by virtue of their selling activities with United States' buyers." (Docket No. 190 at p. 12.)

"pattern" of racketeering element of a RICO claim requires a party to establish "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  <u>Giuliano v. Fulton</u>, 399 F.3d 381, 386-87 (1st Cir. 2005) (citing <u>Northwestern Bell</u>, 492 U.S. at 239).  After setting forth the ten categories of racketeering activities allegedly attributable to plaintiff Rojas, the magistrate judge found a threat of continued criminal activity "particularly in light of the extended period of time the allegations encompass, that is, since 2004," and because "[p]laintiff Rojas still has many valuable pieces belonging to [d]efendant."  (Docket No. 190 at p. 15.)

**B.   Plaintiffs' Objections**

Not a model of clarity, plaintiffs' objections to the R&R's analysis of defendant Taburno's section 1962 (c) and (d) claims appear to be:  (1) that plaintiff Rojas does not in fact possess any of defendant Taburno's property; (2) that the counterclaim is devoid of any factual allegations that plaintiff Rojas committed any criminal activity; and (3) that the magistrate judge failed to discuss the concepts of "open-ended" and "closed-ended" continuity necessary to a "pattern of racketeering activity" analysis.  (Docket No. 207 at pp. 5-8.)  The Court addresses each objection in turn.

    **1.**    **Rojas' Illegitimate Possession and Alleged Criminal Activity**

For the purposes of a motion to dismiss, the Court must take all well-pleaded facts contained in a counterclaim as true and draw all reasonable inferences in favor of the complainant. <u>Gargano v. Liberty Int'l. Underwriters, Inc.</u>, 572 F.3d 45, 48-49 (1st Cir. 2009). In her counterclaim, defendant Taburno states that "[a]long the 35 years of collaboration with [artist Victor Vasarely and Yvaral Vasarely] and through her marriage, she became the owner of an important collection of artworks," (Docket No. 35 at p. 12); that "a final judgment [in France] declared her as the sole owner," <u>id.</u>; that sometime in 2005 "[t]he situation turned bitter[,] [and] [defendant Taburno] terminated her collaboration with Rojas . . . [but] he emptied all of Globar's account, with [her] moneys in it," <u>id.</u> at p. 15; that "Rojas had her antiques and artwork hanging on the walls of his condo and spread on the floor leaning against the walls . . . [and when she] requested him to return her things . . . he did not," <u>id.</u> at pp. 18-19; that in 2013 "Rojas had placed some of her belongings in his personal storage in the building[,] [and when] [Taburno] started asking that those additional belongings be returned to her, . . . Rojas ignored the demands," <u>id.</u> at pp. 20-21; and that "Rojas has refused to return her belongings and has, apparently, continued selling [her] artwork without her authorization," <u>id.</u> at p. 22. Taking these facts as true, as it must for the purposes of the

motion to dismiss, the Court rejects plaintiffs' first objection

that the R&R improperly concluded that plaintiff Rojas "still has

many valuable pieces belonging to [d]efendant." Plaintiffs' second

objection cannot survive either, in light of the text of defendant

Taburno's counterclaim. Simply stated, section 1962(d)'s elements

do require criminal conduct — "racketeering activity" that is

outlined in section 1962(1) — and defendant Taburno's counterclaim

is replete with factual allegations of such conduct. (See Docket

No. 35 at pp. 12-24; Docket No. 190 at pp. 13-14.)

### 2. Pattern of Racketeering Activity's Continuity Requirement

Plaintiffs' third objection to the magistrate

judge's conclusion, however, holds water. The R&R admittedly does

not dedicate a lengthy analysis to the additional continuity

requirement of a section 1962(d) cause of action. (See Docket No.

190 at p. 15.) It merely states:

> Regarding the requirement of the threat of continued
> criminal activity, the Court finds the allegations are
> also enough to satisfy this prong, particularly in light
> of the extended period of time the allegations encompass,
> that is, since 2004. See Apparel Art Int'l, Inc. v.
> Jacobson, 967 F.2d 720, 723 (1st Cir. 1992) (The acts
> must be similar, related, or encompass multiple criminal
> episodes over a significant period of time). [sic] As
> Plaintiff Rojas still has many valuable pieces belonging
> to Defendant, the Court finds that a threat of continued
> criminal activity still exists.

(Docket No. 190 at p. 15.) Accordingly, the parties are entitled

to a more thorough, de novo analysis.

The Supreme Court has "described continuity as 'both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 16 (1st Cir. 2000) (citing Northwestern Bell, 492 U.S. at 241).  Pursuant to the "closed-ended" approach, "continuity is established by showing a series of related predicates extending over a substantial period of time that amount to a threat of continued criminal activity." Giuliano, 399 F.3d at 387 (internal quotations and citation omitted).  The "open-ended" approach, on the other hand, allows a plaintiff to state a claim without waiting for a long-term pattern to develop "so long as the alleged racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or are part of an ongoing entity's regular way of doing business." Id. (internal quotations and citation omitted).

### a.   Closed-ended Continuity

Closed-ended continuity may sometimes be established by virtue of a large number of alleged predicate acts and a lengthy duration of the alleged racketeering activity. Giuliano, 399 F.3d at 387.  "This is because, where the temporal duration of the alleged activity and the alleged number of predicate acts are so extensive that common sense compels a conclusion of continuity, closed-ended continuity should be found."

Id. (internal citations omitted).  In her counterclaim, defendant Taburno alleges ten types of predicate acts extending over a ten-year period, all of which relate to plaintiff Rojas' possession of defendant Taburno's property and assets.  (See Docket No. 35 at pp. 25-26.)  The Court finds those acts to be too few and too sporadic, however, to give rise automatically to the closed-ended continuity envisioned by appellate courts. Cf., Fleet Credit Corp. v. Sion, 893 F.2d 441, 446-47 (1st Cir. 1990) (finding allegations of 95 fraudulent mailings over a 4.5-year period to be adequate, without more, to state a pattern of racketeering); see also Guiliano, 399 F.3d at 387 ("[W]here only a few predicate acts are alleged . . . continuity can never be established.").  This case thus falls into the "middle ground[,] where the duration and extensiveness of the alleged conduct does not easily resolve the issue[,] . . . [and where] we examine other indicia of continuity." Guiliano, 399 F.3d at 387.

          When a case falls into the middle ground, the First Circuit Court of Appeals has "consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims."  Guiliano, 399 F.3d at 390.  The First Circuit Court of Appeals finds itself "in good company," id., as that tenet holds true throughout many other circuits.  See, e.g., Edmonson & Gallagher v. Alban Towers Tenants Ass'n., 310 U.S. App. D.C. 409 (D.C. Cir. 1995) ("[C]ombination of single scheme, single

injury, and few victims . . . makes it virtually impossible for plaintiffs to state a RICO claim."); Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1545 (10th Cir. 1993) ("Where the scheme has a limited purpose, most courts have found no continuity."); Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) (upholding dismissal of a RICO claim where a "closed-ended series of predicate acts . . . constituted a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities."); Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989) ("Defendants' actions were narrowly directed towards a single fraudulent goal."). When a party's alleged racketeering falls in the middle ground, therefore, "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims [is] 'highly relevant.'" Efron, 223 F.3d at 18 (citations omitted). In this case, defendant Taburno identifies herself as the only victim of the plaintiffs' actions. (Docket No. 35 at pp. 24-28.) She also alleges that plaintiff Rojas' scheme of "stealing" her belongings has a singular objective: to misappropriate her assets, artwork, antiques, and general belongings for his own financial gain. (See Docket No. 190 at p. 10) ("In a nutshell, Defendant avers that in the end, through the effected racketeering acts, Plaintiffs seek to profit from her artwork and wealth by selling off her pieces without her consent,

that this has deprived her of her property[,] and that this has caused her financial and property damages."); (see also Docket No. 35 at p. 26) ("These predicate acts are all related to the robbery of Vasarely's assets, artwork, antiques, and general belongings and by misappropriation by fraud."). Those contentions clearly exhibit the type of single scheme, single injury, and single victim case that is fatal to a successful RICO claim. Because "RICO is 'not aimed at the isolated offender,'" Roeder v. Alpha Indus., Inc., 814 F.2d 22, 31 (1st Cir. 1987) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 and 116 Cong. Rec. 35193 (1970) (statement of Rep. Poff)), the Court cannot hold that defendant Taburno's counterclaim alleges closed-ended continuity.

### b.    Open-Ended Continuity

Defendant Taburno's claims fare no better under an open-ended continuity analysis. A party may establish open-ended continuity "by showing that the predicate acts pose a threat of continued criminal activity in that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or are part of an ongoing entity's regular way of doing business.'" Trundy v. Strumsky, 1992 U.S. Dist. LEXIS 23228, 974 F.2d 1329 (1st Cir. 1992) (citing Northwestern Bell, 492 U.S. at 242). In such an inquiry, courts turn to the nature of the RICO enterprise and of the predicate acts. Cofacredit S.A. v. Windsor Plumbing Supply Co., Inc., 187

F.3d 229, 242 (2d Cir. 1999).  Where, as here, an enterprise's
nature is a legitimate business, plaintiffs' allegations must
support an inference "that the predicate acts were the regular way
of operating that business, or that the nature of the predicate
acts themselves implies a threat of continued criminal activity."
Id. at 243.

      With regard to the entities in this case,
defendant Taburno admits that "Inart, Inart Services[,] and/or
Globar enterprise have a legitimate purpose."  (Docket No. 35 at
p. 25.)  She does not assert that the alleged racketeering acts
were a regular means by which plaintiffs Inart, Inart Services, or
Globar conducted their business, however, and no such inference may
be drawn from the counterclaim.  See, e.g., Roeder v. Alpha Indus.
Inc., 814 F.2d 22, 31 (1st Cir. 1987) (finding "no suggestion that
defendants used similar means to obtain other subcontracts, or that
they bribed anyone else.").  A finding of open-ended continuity,
therefore, must rest on the nature of the alleged predicate acts
for the claims to survive.

      A court must examine the specific facts of the
case to determine whether predicate acts establish open-ended
continuity.  Northwestern Bell, 492 U.S. at 242.  "The threat of
continuing racketeering activity need not be established, however,
exclusively by reference to the predicate acts alone; rather, a
court should consider the totality of the circumstances surrounding

the commission of those acts." <u>Heinrich v. Waiting Angels Adoption</u>

<u>Servs.</u>, 668 F.3d 393, 410 (6th Cir. 2012) (citation omitted).  As

the magistrate judge reviewed, the racketeering activities alleged

in this case are:

> theft from interstate shipment, when a 53' container with
> Taburno's belongings and artworks disappeared under
> Rojas' supervision in interstate shipment;
>
> extortionate credit transactions, when plaintiffs
> requested and obtained credit and financial transactions
> under their name by using Taburno's assets;
>
> mail fraud, when the proceeds of a fraudulently
> registered property under the name of Rojas were sent by
> mail to Puerto Rico;
>
> wire fraud, when plaintiffs used the phone, internet,
> email and fax in pursuit of the sale of the unauthorized
> sales of Taburno's belongings;
>
> obstruction of criminal investigations and state or local
> law enforcement, when plaintiffs caused INS to terminate
> Taburno's visa to force her to leave the country and
> forfeit her rights as a victim of Rojas' robbery;
>
> interference with commerce, robbery, or extortion, when
> Taburno's art was sold and sent, on at least 16
> occasions, overseas to the continental United States,
> without her authorization;
>
> racketeering, when Rojas established a pattern of
> extortion and robbery to steal Taburno's money and
> artworks, as well as a fraud scheme to register Taburno's
> properties and belongings under Rojas' name;
>
> engaging in monetary transactions in property derived
> from specified unlawful activity, when plaintiffs used
> Taburno's funds to acquire properties in Chicago derived
> from their theft and extortion;
>
> interstate transportation of stolen property, when at
> least one large robbed Taburno painting was shipped to
> the United States mainland by plaintiffs;

> and fraud, when plaintiffs registered Taburno's
> properties (car, real estate, and storage facilities)
> under Rojas' name and when they concealed the sale of
> Taburno's art and properties to retain the proceeds.

(Docket No. 190 at pp. 13-14) (corresponding sections of 18 U.S.C. § 1961 omitted). Even despite the wide-ranging predicate acts alleged in the counterclaim, the Court cannot say that plaintiff Rojas' actions will pursue indefinitely into the future. As discussed above, the allegations here indicate a case with a single scheme, single injury, and single victim — one seemingly resulting from an intimate personal relationship gone sour.[3] "[S]chemes which have a clear and terminable goal have a natural ending point . . . [and] therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." Efron, 223 F.3d at 19 (quoting Vicom, Inc. v. Harbridge Merchant Servs. Inc., 20 F.3d 771, 782 (7th Cir. 1994)); see also Giuliano, 399 F.3d at 391; First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 180-81 (2d Cir. 2004). All of the racketeering activity was focused on plaintiff Rojas' singular objective of profiting from defendant Taburno's wealth and belongings. With the exception of the sale of defendant Taburno's artwork, none of the alleged

---

[3] Defendant Taburno indicates that Rojas used to live with her and her husband, Yvaral: "He became a friend, and, later, they considered him the son they never had." (Docket No. 35 at p. 13.) She then alleges that her husband "died a sudden death in Rojas' and [her] arms," that her husband "asked Rojas, then 40, to 'take care' of his 55 year old wife and not leave her alone[,] [and] Rojas swore to it." Id. at p. 14. "The situation turned bitter," however, in 2005. Id.

predicate acts demonstrates a repetitive nature, let alone an indefinite one.  Although Rojas' continued possession of Taburno's artwork may indicate a specific threat of continued sales in the future, the threat is not indefinite, because "[o]nce achieved, the illegal scheme, as alleged, would end." Giuliani, 399 F.3d at 391; see also Lefkowitz v. Bank of N.Y., 2003 U.S. Dist. LEXIS 19520, 31 (S.D.N.Y. Oct. 31, 2003) ("Lefkowitz argues that because there is 'no end in sight' to the administration of the estates, there is a threat of ongoing criminal activity 'extending indefinitely into the future.'  But this contention misconstrues the open-ended continuity requirement.  The administration of the estates will eventually, definitively, end.").  The counterclaim thus alleges "an inherently terminable scheme — a pattern of racketeering activity with a built-in ending point," Heinrich, 668 F.3d at 410 — that has led courts to reject open-ended continuity in similar situations.  See, e.g., Heinrich, 668 F.3d at 410-11 (citing Vemco v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994) (finding no open-ended continuity where only a single scheme to defraud one plaintiff the cost of one paint system was pled); Vild v. Visconsi, 956 F.2d 560, 569 (6th Cir. 1992) (finding failure to plead open-ended continuity when "the acts alleged amount[ed] at best to a breach of contract with a single customer"); and Thompson v. Paasche, 950 F.2d 306, 311 (6th Cir. 1991) (finding that there was no open-ended continuity because the fraudulent scheme to sell

nineteen lots of land was "an inherently short-term affair" that
would end once the lots were sold)).  Because the counterclaim does
not suggest that plaintiffs' scheme will "[go] on without end," but
rather that a "soon-to-be reached endpoint" exists, Efron, 223 F.3d
at 20, an open-ended continuity argument cannot support defendant
Taburno's RICO claims.   See Windsor Plumbing, 187 F.3d at 244
("[A]n inherently terminable scheme does not imply a threat of
continued racketeering activity.").    Without the requisite
continuity, defendant Taburno's counterclaim fails to allege a
sufficient "pattern of racketeering activity" against plaintiff
Rojas.    Accordingly, plaintiffs' motion to dismiss the
counterclaim's sections 1962(c) and (d) claims is **GRANTED.**

**IV.  Conclusion**

        After due consideration, the Court has made an independent
examination of the entire record in this case, including
plaintiffs' objections and defendant Taburno's response in
opposition, and **ADOPTS IN PART and REJECTS IN PART** the magistrate
judge's findings and recommendations.   The Court **DISMISSES WITH
PREJUDICE** the following:  defendant Taburno's counterclaims against
all plaintiffs pursuant to 18 U.S.C. § 1513; her counterclaims
against plaintiffs Inart Corporation and Inart Services pursuant to
18 U.S.C. § 1962 (a), (b), and (c), as well as § 1962 (d) for
conspiring to violate §§ 1962 (a), (b), and (c); her counterclaims
against plaintiff Rojas pursuant to 18 U.S.C. §§ 1962 (a) and (b),

Civil No. 13-1766 (FAB)                                                    18

as well as § 1962 (d), for conspiring to violate § (a) and (b); and
her counterclaims against plaintiff Rojas pursuant to 18 U.S.C.
§ 1962(d), for conspiring to violate § 1962 (c).  All Commonwealth
of  Puerto  Rico  law  claims  against  all  plaintiffs,  survive
plaintiffs' motion to dismiss.  Plaintiffs' motion to dismiss,
(Docket No. 62), therefore, is **GRANTED IN PART and DENIED IN PART**.

    Judgment shall be entered accordingly.

    **IT IS SO ORDERED.**

San Juan, Puerto Rico, August 21, 2014.

                                      s/ Francisco A. Besosa
                                      FRANCISCO A. BESOSA
                                      UNITED STATES DISTRICT JUDGE