**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LUIS ROJAS-BUSCAGLIA, *et al.*,

    **Plaintiffs,**

        **v.**

MICHELE TABURNO-VASARHELYI,
a/k/a MICHELE TABURNO-VASARELY,

    **Defendant.**

**Civil No.** 13-1766 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is United States Magistrate Judge Camille L. Velez-Rive's Report and Recommendation ("R & R") (Docket No. 364), recommending that defendant Michele Taburno-Vasarely ("Vasarely")'s motion for partial summary judgment (Docket No. 312) be granted in part and denied in part, as follows:

> 1.   granted on Vasarely's breach of the 2010 Artwork Agreement counterclaim, but that issues of fact remain as to the amount of damages (see sections II.A. and .B., infra.);

> 2.   granted on plaintiffs' claims of tortious interference with plaintiffs' sales agreements with Campolieto and Leyba, but that issues of fact remain as to the amount of damages for the Campolieto sales (see section II.C., infra.);

> 3.   denied on plaintiffs' claim seeking certificates of authenticity for six artworks and related damages (see section II.D., infra.);

> 4.   denied on plaintiffs' defamation claim (see sections II.E., infra.);

> 5.   granted on plaintiffs' breach of employment agreement claim (see sections II.F., infra.); and

6.   granted on Vasarely's counterclaims for breach of
contract related to the Chicago studio and the Chicago
condo, but that issues of fact remain as to the amount of
damages (<u>see</u> sections II.G. and .H., <u>infra.</u>)

(Docket No. 364 at pp. 50-51.)

Defendant Vasarely and plaintiffs Luis Rojas Buscaglia ("Rojas"), Inart Corp. ("Inart"), and Inart Services, Inc. ("Inart Services")[1] filed objections to the R & R (Docket Nos. 367, 387) and opposed each other's objections (Docket Nos. 390, 392).

## I.  STANDARD OF REVIEW

A district court may refer a pending dispositive motion to a magistrate judge for a report and recommendation.  <u>See</u> 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).  Any party may file written objections to the report and recommendation, and any party that files a timely objection is entitled to a *de novo* determination of those portions of the report to which specific objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2)-(3).  In conducting its review, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); <u>accord</u> Fed. R. Civ. P. 72(b)(3).

---

[1] Plaintiff Rojas is the sole owner, director, and officer of corporate plaintiffs Inart and Inart Services.  (Docket No. 308 at ¶ 1; Docket No. 333-1 at ¶ 1.)

## II.  DISCUSSION

## A.  Defendant Vasarely's Counterclaim: Breach of the 2010 Artwork Agreement

Defendant Vasarely raised a counterclaim alleging that plaintiffs breached a contract signed by Vasarely and plaintiff Rojas ("the 2010 Artwork Agreement") pursuant to which plaintiff Inart would sell certain artwork belonging to Vasarely. (Docket No. 35 at pp. 29-33.) Vasarely moved for summary judgment. (Docket No. 312 at pp. 9-16.)

The magistrate judge recommended that summary judgment be granted in Vasarely's favor, but found that issues of fact remain as to the amount of damages owed for plaintiffs' breach. (Docket No. 364 at pp. 31-36.) Defendant Vasarely and plaintiffs objected to the magistrate judge's recommendation and findings, (Docket No. 367 at pp. 1-6; Docket No. 387 at pp. 2-5), and responded to each other's objections, (Docket No. 390 at pp. 2-3; Docket No. 392 at pp. 3-7).

After independently examining the record, and upon consideration of the parties' arguments and objections, the Court **ADOPTS IN PART, MODIFIES IN PART**, and **REJECTS IN PART** the magistrate judge's findings and recommendations on this counterclaim. The Court proceeds to analyze the alleged breaches for which Vasarely seeks summary judgment and damages.

1.   **Nonpayment for Artwork Sales - Leyba**

In 2012 and 2013, plaintiffs Rojas and Inart[2] sold artwork belonging to defendant Vasarely to Herman Leyba ("Leyba"). Leyba is an art dealer that does business through two corporations, Ideobox and Artley. (Def.'s Ex. 1 at p. 233; Def.'s Ex. 2 at p. 12.)[3] After purchasing artwork from plaintiffs at a price that Leyba calls the "base price," Leyba resold the artwork to clients at a price that he calls the "sale price," which is higher than the "base price" because it includes Leyba's commission. (Def.'s Ex. 11.) The following table shows the "sale prices," "base prices," and amounts Rojas paid Vasarely for the artwork sold to Leyba.

---

[2] For simplicity, the Court refers to Rojas and Inart as "plaintiffs" in this subsection. The third plaintiff in this action - Inart Services - was not involved in the Leyba sales.

[3] Defendant Vasarely submitted eighty-eight exhibits in support of her motion for summary judgment. The exhibits are filed at Docket Nos. 308-311. For simplicity, the Court cites to the exhibits as they are originally numbered by the defendant.

TABLE 1[4]

| Artwork | Amount Client Paid Leyba ("Sale Price") | Amount Leyba Paid Plaintiffs ("Base Price") | Amount Plaintiffs Paid Vasarely |
|---|---|---|---|
| *Boo*, *Tekers MC*, *Kerhon*, *Egsin*, *Axon*, *Moulin*, & *Color Print Vega* (2) | $1,226,000 | $1,075,000 | $860,000 |
| *Koska Nagy* (or *Koska Neg*) | $420,000 | $380,000 | $304,000 |
| *Tri-Veg* & *Zebra* (or *Zebres*) | $122,000 | $100,500 | $63,900 |
| *Separam*, *Emotta*, *Bela*, & *Vega* | $460,500 | $390,500 | $312,400 |
| *Triton* | $448,000 | $390,000 | $0 |
| **TOTAL** | **$2,676,500** | **$2,336,000** | **$1,540,300** |

Defendant Vasarely claims that plaintiffs have not paid her in full for the artwork sold to Leyba and have thus violated clause 7 of the 2010 Artwork Agreement.  (Docket No. 312 at pp. 10-12.)  Clause 7 provides in part as follows:

> Payments of the sale price for any Artwork under this agreement shall be made by the purchaser as follows:  80% to Vasarely or her corporation and 20% to INART.  Such payment of 20% of the sales price directly by the client constitutes the sole payment and/or commission and/or compensation to INART.

(Def.'s Ex. 3 at ¶ 7.)  Vasarely alleges three breaches of clause 7, which the Court addresses in turn.

First, defendant Vasarely claims that plaintiffs breached clause 7 of the contract by not paying her the full 80% of the "base price" for the sale of *Tri-Veg* and *Zebra*.  Vasarely permitted

---

[4] See Def.'s Ex. 1 at pp. 381-83; Def.'s Ex. 2 at p. 37; Def.'s Ex. 11; Def.'s Ex. 15 at ¶¶ 12, 15-20.

plaintiff Rojas to deduct $16,500 from her portion of the proceeds of this sale so he could buy a diamond ring for her, but Vasarely has not received the ring.   (Def.'s Ex. 15 at ¶¶ 16-20.) Plaintiffs did not rebut this argument in their opposition to defendant's motion for summary judgment. See Docket No. 333 at pp. 4-6.  Nor did plaintiffs duly contest these facts in their opposing statement of material facts.  See Docket No. 333-1 at ¶ 30.[5]  There is therefore no genuine dispute that plaintiffs failed to pay Vasarely 80% of the "base price" for the sale of *Tri-Veg* and *Zebra*, and that plaintiffs owe Vasarely the diamond ring or its value of $16,500.   The Court thus **GRANTS** defendant Vasarely's motion for summary judgment as to the first breach.

Second, defendant Vasarely claims that plaintiffs breached clause 7 of the contract by not giving Vasarely 80% of the "base price" for the sale of *Triton*.   It is uncontested that plaintiffs received $390,000 from Leyba for the sale of *Triton*. See Def.'s Ex. 18A-C.  At the start of this litigation, plaintiffs deposited 80% of that amount, or $312,000, with the Clerk of the Court.  See Docket Nos. 11-12.  Because no dispute remains as to this part of Vasarely's counterclaim, the Court **GRANTS** Vasarely's

---

[5] Plaintiffs proffer in their opposing statement of material facts that Rojas instructed the seller of the diamond ring to finalize the ring's sale directly with Vasarely, and that Rojas never received the ring or a refund from the seller. (Docket No. 333-1 at p. 9.)  The evidence that plaintiffs point to, however, in no way substantiates these allegations.  See Def.'s Ex. 16.

motion for summary judgment as to the second breach.  The $312,000 shall be dispersed to defendant Vasarely.

Third, defendant Vasarely claims that plaintiffs breached clause 7 of the contract by paying her 80% of the "base price" (the price Leyba paid plaintiffs) instead of 80% of the "sale price" (the price clients paid Leyba) for the Leyba sales.  Defendant Vasarely accordingly seeks damages in the amount of $272,400, which is the difference between 80% of the sum of the "sale prices" ($2,141,200)[6] and 80% of the sum of the "base prices" ($1,868,000)[7].

Clause 7 of the contract provides that "[p]ayments of the sale price for any Artwork under this agreement shall be made by the purchaser as follows:  80% to Vasarely or her corporation and 20% to INART."  (Def.'s Ex. 3 at ¶ 7.)  Vasarely argues that the term "sale price" in clause 7 should be interpreted as "the price paid by the *customer* at the time of the sale."  (Docket No. 312 at p. 10 (emphasis added).)  Because Leyba is not a *customer* but an art dealer who immediately resells artwork to a final customer, Vasarely argues, clause 7 entitles her to 80% of the price paid by the final customer.  Id. at pp. 10-11.

---

[6] Clients paid Leyba a total sum of $2,676,500 for Vasarely's artwork.  See supra, Table 1.  Eighty percent of $2,676,500 is $2,141,200.

[7] Leyba paid plaintiffs a total sum of $2,336,000 for Vasarely's artwork.  See supra, Table 1.  Eighty percent of $2,336,000 is $1,868,800.

The initial question of whether the term "sale price" in clause 7 is ambiguous is a question of law.  See Torres Vargas v. Santiago Cummings, 149 F.3d 29, 33 (1st Cir. 1998).  The Court looks to Puerto Rico law for the standard for determining whether a contract term is ambiguous.  See Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 109 (1st Cir. 2001).  Article 1233 of the Puerto Rico Civil Code provides:

> If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.
>
> If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.

P.R. Laws Ann. tit. 31, § 3471.  A contract term is "clear" when it is "'lucid enough to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation.'"  Home Ins. Co. v. Pan Am. Grain Mfg. Co., 397 F.3d 12, 16 (1st Cir. 2005) (quoting Heirs of Ramirez v. Superior Court, 81 P.R.R. 347, 351 (1959)).  The terms of a contract "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together."  P.R. Laws Ann. tit. 31, § 3475.

The Court finds that as a matter of law, ambiguity exists as to the meaning of "sale price" in clause 7 of the 2010 Artwork Agreement.  No provision of the contract contemplates involvement or collaboration with other art dealers.  The term "sale price"

therefore leaves room for a difference of interpretation: if plaintiffs sold artwork "to" Leyba, then the sale price would be the price Leyba paid plaintiffs; if plaintiffs sold artwork "through" Leyba, then the sale price would be the price clients ultimately paid Leyba.

The Court's analysis, however, does not end there.  If a contract term in ambiguous, "extrinsic evidence is admissible to prove the parties' intent, and summary judgment is appropriate only if the undisputed extrinsic evidence of intent 'supports only one of the conflicting interpretations.'" Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 54 (1st Cir. 2010) (quoting Adria, 241 F.3d at 111).  To determine the contracting parties' intent, "attention must principally be paid to their acts, contemporaneous and subsequent to the contract." P.R. Laws Ann. tit. 31, § 3472.

As evidence of intent, defendant Vasarely submits her own affidavit in which she states as follows:

> In all my forty years, approximately, involved in the world of art, I had never heard of any such concepts as "base price" and "sale price".  The sale price of an artwork is one: the price that the final customer pays. In the world of art when one broker brings another broker to a deal, they split their commission in two.

(Def.'s Ex. 16 at ¶ 13.)

In his own affidavit and during an attachment hearing before the magistrate judge, plaintiff Rojas stated that Vasarely knew "from the beginning" that Leyba would resell the artwork and

make his own profit, and that Vasarely understood that an agreement was reached pursuant to which Leyba's profit would be capped at 15% of the price he sold the artwork to clients.  See Docket No. 333-2 at ¶ 12; Docket No. 166 at pp. 20-23.  Rojas also stated that Vasarely never claimed that her 80% should be calculated from Leyba's resale price until after the present lawsuit was filed. (Docket No. 333-2 at ¶ 12.)

Considering this evidence, the Court finds that there remains a genuine dispute as to which price the parties intended to be the basis for Vasarely's 80% profit.  The Court therefore **DENIES** defendant Vasarely's motion for summary judgment as to her counterclaim that she is owed 80% of the difference between the price clients paid Leyba and the price Leyba paid plaintiffs.

## 2.   Nonpayment for Artwork Sale - Campolieto

In August 2012, plaintiff Inart Services (represented by plaintiff Rojas) sold the artwork titled *Gestalt-Rugo*, which belonged to defendant Vasarely, to Horacio Campolieto ("Campolieto") pursuant to an installment agreement.  (Def.'s Ex. 35.)  The installment agreement set the sale price at $390,000, which Campolieto would pay as follows: (1) $60,000 down payment, (2) transfer of a car valued at $60,000, (3) conveyance of an artwork by Melvin Martinez valued at $20,000, and (4) twenty-five monthly payments of $10,000.  Id.

Defendant Vasarely claims that plaintiffs breached the 2010 Artwork Agreement by not paying her the full 80% of the sale price of *Gestalt-Rugo*.  There is no genuine dispute that Vasarely was to receive 80% of the sale price of *Gestalt-Rugo* and that plaintiffs were to earn 20% of the sale price as commission.  See Def.'s Ex. 1, pp. 291-93 (plaintiff Rojas's deposition in which he states that 80% of the *Gestalt-Rugo* sale corresponds to Vasarely); Docket No. 2 at p. 9 (plaintiff Rojas's complaint in which he states that plaintiffs would receive 20% commission on the  sale of *Gestalt-Rugo*).   Thus, plaintiffs were to receive $78,000 in commission.[8]

Regarding payments, there is a genuine dispute as to who received what amounts from the initial $60,000 down payment. Vasarely attests that she received $8,000 and that Rojas kept $52,000.  (Def.'s Ex. 15 at ¶ 26.)   Rojas testifies that he and Vasarely made an accounting together upon receipt of the $60,000, and that Vasarely received everything that corresponded to her 80%. (Def.'s Ex. 1 at pp. 293-94.)   There is no genuine dispute, however, as to the following facts:

1.   The car valued at $60,000 is in Rojas's name and was  never transferred to Vasarely.  (Def.'s Ex. 1 at pp. 305-08.)

2.   The artwork by Melvin Martinez valued at $20,000 was given to Vasarely.  (Docket No. 118.)

---

[8] The sale price of *Gestalt-Rugo* was $390,000.  Twenty percent of $390,000 is $78,000.

3.      From October 2012 to April 2013, Campolieto paid
        Rojas $70,000 in monthly payments, from which Rojas
        gave Vasarely $56,000 and kept $14,000.[9]

4.      In June 2013, Campolieto paid Rojas $16,000, and
        Rojas kept the full amount.  (Def.'s Ex. 1 at
        p. 303; Docket No. 157 at p. 158.)

        Thus, there is no dispute that plaintiff Rojas has kept

at least $90,000 in commission from the *Gestalt-Rugo* sale,[10] which

is $12,000 more than the $78,000 he was entitled to receive in

commission.[11]   The Court therefore **GRANTS** defendant Vasarely's

motion for summary judgment as to her counterclaim that plaintiffs

failed to pay her the full 80% of the sale price of *Gestalt-Rugo*.

Plaintiffs Rojas and Inart Services owe Vasarely at least $12,000,

and whether they owe her more will be determined at trial.[12]

### 3.    Failure to Return Artwork After Contract Termination

        In an email to Rojas dated April 7, 2013, defendant

Vasarely aired her personal and professional grievances with Rojas

---

[9] For the seven-month period from October 2012 to April 2013,
Campolieto paid Rojas $10,000 per month, totalling $70,000.
(Docket No. 157 at pp. 157-58.)  Each month, Rojas gave Vasarely
$8,000 and kept $2,000.  (Def.'s Ex. 1 at p. 294.)  Thus, in total,
$56,000 was given to Vasarely and $14,000 was kept by Rojas.

[10] The total of $90,000 is the sum of $60,000 (the value of the car
that Rojas keeps in his name), $14,000 (the total Rojas kept from
the seven monthly payments), and $16,000 (the June 2013 payment).

[11] Plaintiffs Inart Services and Rojas were entitled to 20% of the
sale price.  Twenty percent of $390,000 is $78,000.

[12] The partial judgment of $12,000 assumes that Rojas retains the
car valued at $60,000.  If Rojas transfers the car to Vasarely,
then this amount will be recalculated at trial.

and stated: "I no longer want to work with you, you don't do anything, other than abuse me and take away my fortune by Force [*sic*]." (Def.'s Ex. 45.)  In subsequent emails sent to Rojas in May and July 2013, Vasarely requested that Rojas return all of Vasarely's artwork in his possession.  See Def.'s Exs. 47-49. Nonetheless, Rojas did not return her artwork until February 7, 2014, when he did so pursuant to a Court order.  See Docket No. 118.  Rojas still keeps in his possession an artwork titled *La Bergere*, which he states was loaned to him by Vasarely before they signed the 2010 Artwork Agreement.  (Def.'s Ex. 17 at p. 548.)

        Defendant Vasarely now claims that her statement "I no longer want to work with you" in the April 7th email constituted her notice of termination of the 2010 Artwork Agreement.  (Docket No. 312 at p. 14.)  Vasarely claims that Rojas breached clause 12 of the 2010 Artwork Agreement by not returning her artwork upon the agreement's termination.  Id.  Pursuant to the $1,000 per day fine stipulated in clause 12, she seeks $306,000 for the 306 days that elapsed between the date of her email (April 7, 2013) and the date Rojas returned some of her artwork (February 7, 2014).  Id.  She also seeks the return of *La Bergere* and an additional $1,000 per day from February 8, 2014, until the day *La Bergere* is returned to her.  Id.

        Clause 11 of the 2010 Artwork Agreement provides that the agreement can be terminated for reasonable cause or for breach of

contract with eight days' notice.    (Def.'s Ex. 3 at ¶ 11.)
Clause 12 provides that upon termination of the agreement, Inart
"shall return all the artworks to Vasarely by depositing them in a
storage facility to be designated by Vasarely," and if the artworks
have not been returned within forty-eight hours of Vasarely making
available a suitable storage facility, Inart "shall be fined"
$1,000 per day, payable to Vasarely.    Id. at ¶ 12.

        The 2010 Artwork Agreement does not prescribe how notice
of termination is to be provided.    Nor does either party suggest
that Puerto Rico contract law has a standard for sufficiency of
notice.    Generally, however, "notice must be clear, definite,
explicit, and unambiguous."    Jasty v. Wright Med. Tech., Inc., 528
F.3d 28, 36 (1st Cir. 2008) (internal quotation marks and citation
omitted).    Here, a reasonable factfinder could find that the
statement "I no longer want to work with you" in the April 7th
email to Rojas failed to give plaintiffs notice that Vasarely was
terminating the 2010 Artwork Agreement, especially because the
email never mentions the agreement or Inart, and because the email
primarily concerns personal matters.    There is therefore a genuine
dispute on this counterclaim, and defendant Vasarely has not met
her summary judgment burden.    See Daniels v. Agin, 736 F.3d 70, 78
(1st Cir. 2013) ("A dispute is genuine if a reasonable factfinder
'could resolve the point in favor of the non-moving party.'"
(quoting Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir.

2013))).   The Court thus **DENIES** defendant Vasarely's motion for summary judgment as to her counterclaim that plaintiffs breached the 2010 Artwork Agreement by not returning her artwork.

**B.   Plaintiffs' Claim: Breach of the 2010 Artwork Agreement**

In Count I of their complaint, plaintiffs raised a breach of contract claim alleging that defendant Vasarely breached the 2010 Artwork Agreement.  (Docket No. 2 at pp. 6-8.)  Vasarely moved for summary judgment on this claim, arguing in a single paragraph that pursuant to article 1077 of the Puerto Rico Civil Code, she is excused from performance under the agreement because plaintiffs materially breached the agreement.  See Docket No. 312 at pp. 16-17.  The magistrate judge did not make a specific recommendation on this part of defendant's motion.[13]

Article 1077 of the Puerto Rico Civil Code provides in relevant part:

> The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him. The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case.

P.R. Laws Ann. tit 31 § 3052.  Not every breach of a contractual obligation gives rise to the right to rescind the contract pursuant

---

[13] The magistrate judge recommended that Vasarely's motion for summary judgment on her breach of contract counterclaim be granted in Vasarely's favor, see Docket No. 364 at p. 50, but made no recommendation as to Vasarely's motion for summary judgment on plaintiffs' original breach of contract claim.

to article 1077.  Dopp v. HTP Corp., 947 F.2d 506, 510 (1st Cir.
1991).  The unfulfilled obligation must have been "essential" to
the agreement and "reciprocal in nature." Dopp v. Pritzker, 38
F.3d 1239, 1243-44 (1st Cir. 1994).

Here, in arguing that she is entitled to recision of the 2010
Artwork Agreement, defendant Vasarely posits that because
plaintiffs "substantially breached the Agreement, they cannot
demand [that] Vasarely complies with it."  (Docket No. 312 at
p. 16.)  Vasarely then cites to article 1077 and an assortment of
cases, but presents no analysis as to how or why article 1077
applies to plaintiffs' contractual obligations. See Docket No. 312
at pp. 16-17.  Vasarely does not explain how plaintiffs'
unfulfilled obligations are essential to the agreement or
reciprocal in nature.  More importantly, the parties in this
litigation allege numerous breaches in the complaint and
counterclaim, yet Vasarely fails to specify and present evidence as
to who breached first.

Because defendant Vasarely has merely "mention[ed] a possible
argument in the most skeletal way, leaving the court to do
counsel's work, create the ossature for the argument, and put flesh
on its bones," see United States v. Zannino, 895 F.2d 1, 17 (1st
Cir. 1990), the Court **DENIES** Vasarely's motion for summary judgment
on plaintiffs' breach of the 2010 Artwork Agreement claim.

## C.   Plaintiffs' Claims:   Tortious Interference

In Counts II and III of their complaint, plaintiffs raised two tortious interference claims alleging that defendant Vasarely interfered with plaintiffs' sales agreements with Campolieto and Leyba.   (Docket No. 2 at pp. 8-13.)   Vasarely moved for summary judgment on these claims.   (Docket No. 312 at pp. 17-20.)   The magistrate judge recommended that summary judgment be granted in defendant Vasarely's favor.   (Docket No. 364 at pp. 36-41.)   She also recommended that the tortious interference claim concerning Leyba be dismissed, but found that issues of fact remain as to the amount of money due concerning the Campolieto sale.   Id.

Plaintiffs did not object to the magistrate judge's findings or recommendations on these two claims.   See Docket No. 387. Plaintiffs have thus waived their right to district court review, and the Court assumes that plaintiffs agree with the magistrate judge's recommendations.   See Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992) ("Failure to raise objections to the Report and Recommendation waives the party's right to review in the district court."); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985) ("Absent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation.").

After an independent review, the Court **ADOPTS IN PART** the magistrate judge's findings and recommendations concerning summary

judgment on plaintiffs' two tortious interference claims. The
Court **MODIFIES** the magistrate judge's finding that issues of fact
remain as to money due concerning the Campolieto sale:  this
finding relates to defendant Vasarely's counterclaim for breach of
the 2010 Artwork Agreement discussed in Part II.A.2 above; it does
not affect dismissal of the tortious interference claim.

The Court **GRANTS** defendant Vasarely's motion for summary
judgment on plaintiffs' two tortious interference claims, and the
claims are **DISMISSED**.

**D.   Plaintiffs' Claim: Certificates of Authenticity**

In Count IV of their complaint, plaintiffs alleged that
defendant Vasarely breached clause 8 of the 2010 Artwork Agreement
by not surrendering certificates of authenticity for six artworks
sold to Leyba: *Triton*, *Kerhon*, *Tri-Veg*, *Separam*, *Emotta*, and *Bela-
IBV*. (Docket No. 2 at pp. 13-15.)  Plaintiffs requested injunctive
relief ordering Vasarely to surrender the six certificates.  Id.
Plaintiffs also sought $50,000 for the alleged damage to their
commercial reputation that resulted from Vasarely's failure to
deliver the certificates.  Id.

Vasarely moved for summary judgment on this claim.  (Docket
No. 312 at pp. 20-22.)  The magistrate judge recommended that the
motion for summary judgment be denied because, although Vasarely
has already delivered the certificates, issues of fact remain
regarding plaintiffs' claim that they suffered damages from

Vasarely's delay in issuing the certificates.  (Docket No. 364 at pp. 41-43.)   Vasarely objected to the magistrate judge's recommendation.  (Docket No. 367 at pp. 6-7.)

Vasarely's objections are two-fold.  First, she argues that "she was (and still is) under no legal obligation to issue the certificates" because "she has not received any moneys from the sale of *Triton*."  (Docket No. 367 at pp. 6-7.)  Pursuant to clause 8 of the 2010 Artwork Agreement, Vasarely is required to deliver the certificate of authenticity for an artwork immediately after receiving her full portion of the sale price.  (Def.'s Ex. 3 at ¶ 8.)   Thus, Vasarely is correct in that she was not contractually required to deliver the *Triton* certificate because she has not received payment in full for that artwork's sale.  This does not affect the other five artworks, however, and issues of fact remain as to whether she has received payment in full for the sales of those pieces.  See supra Part II.A.1.

Vasarely's second argument is that "there was just cause for her apparent delay in submitting the certificates; she could not complete them because she did not have the necessary information." (Docket No. 367 at p. 7.)  Even if Vasarely did not have the necessary information to complete the certificates, she does not provide evidence that she diligently sought the information after receiving payment for the artwork in 2012.  Thus, her second argument is unavailing.

The Court therefore **ADOPTS** the magistrate judge's findings but **MODIFIES** its recommendation.   Because it is uncontested that Vasarely has delivered all six certificates, (Def.'s Ex. 34), the Court **GRANTS** Vasarely's motion for summary judgment on plaintiffs' claim for injunctive relief, and the claim is **DISMISSED AS MOOT**. The Court **DENIES** defendant Vasarely's motion for summary judgment on plaintiffs' claim for damages related to the alleged delay in delivering the certificates

**E.   Plaintiffs' Claim:  Defamation**

In Count V of their complaint, plaintiffs raised claims of defamation and damage to plaintiffs' commercial reputation. (Docket No. 2 at pp. 15-16.)  Defendant Vasarely moved for summary judgment on these claims.  (Docket No. 312 at pp. 22-24.)  The magistrate judge recommended that summary judgment be denied (Docket No. 364 at pp. 43-44), and plaintiffs objected to this recommendation (Docket No. 367 at pp. 7-8).

Pursuant to Puerto Rico law, "a private plaintiff asserting a defamation claim against a private defendant must show that the defendant (1) made a false statement, (2) in a negligent manner, (3) causing actual damage to the plaintiff." Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 43 (1st Cir. 2011).  In an attempt to prove that there is no dispute of fact as to the first two elements, defendant Vasarely presents affidavits from Leyba and herself to prove that her communications with Leyba "have been

mainly limited to the exchange of information to issue pending
certificates" and that "they have kept minimal social contact over
the phone." (Docket No. 312 at p. 23; see Def.'s Ex. 65; Def.'s
Ex. 15 at ¶ 23.)   Plainly, this evidence does not eliminate a
genuine dispute as to whether Vasarely negligently made a false
statement to Leyba about plaintiffs.

    As to the third element, Vasarely argues that it was Rojas
"who self-inflicted any existing damages by bringing Mr. Leyba into
his personal situation with Vasarely." (Docket No. 312 at p. 23.)
This argument is merely conjecture, devoid of evidentiary support.
Thus, Vasarely has failed to prove that there is no genuine dispute
concerning plaintiffs' claims of defamation and commercial
reputation damage.

    The Court therefore **ADOPTS** the magistrate judge's findings and
recommendation and **DENIES** defendant Vasarely's motion for summary
judgment on plaintiffs' claims of defamation and damage to their
commercial reputation.

**F.  Plaintiffs' Claim:  Breach of an Employment Agreement**

    In Count VI of their complaint, plaintiffs alleged that
defendant Vasarely breached an employment agreement. (Docket No. 2
at pp. 17-18.)   Vasarely moved for summary judgment. (Docket
No. 312 at pp. 24-26.)

    The magistrate judge recommended that summary judgment be
granted in defendant Vasarely's favor and that the claim be

dismissed.  (Docket No. 364 at pp. 44-45.)  Plaintiffs objected to
the magistrate judge's recommendation, arguing without any
evidentiary support that "there is no doubt" that Inart Services
"complied with its part [of the employment agreement]" and that
Vasarely "failed to perform her part of the deal." (Docket No. 387
at pp. 5-6.)  Plaintiffs admitted in their opposing statement of
uncontested facts, however, that no employment agreement existed.
See Docket No. 308 at ¶ 126; Docket No. 333-1 at ¶ 126.  Without a
contract, there can be no breach.

    The Court therefore **ADOPTS** the magistrate judge's findings and
recommendation and **GRANTS** defendant Vasarely's motion for summary
judgment on plaintiffs' claim of breach of an employment agreement.
The claim is **DISMISSED**.

## G.   Defendant Vasarely's Counterclaim: Chicago Studio

    Defendant Vasarely raised a counterclaim alleging that
plaintiff Rojas breached a contract regarding the sale of real
property at 312 May Street, Unit 102, Chicago, Illinois, ("the
Chicago studio").  (Docket No. 35 at pp. 36-37.)  Vasarely moved
for summary judgment.  (Docket No. 312 at pp. 26-28.)

    The magistrate judge recommended that summary judgment be
granted in Vasarely's favor.  (Docket No. 364 at p. 45.)  As for
damages, the magistrate judge found no genuine dispute that Rojas
owes Vasarely:

1.   $84,551.29 for half of the proceeds of the sale of
     the Chicago studio;

2.   $38,134.87 for back tax penalties; and

3.   at least $18,403.67 for 2007-2008 real estate
     taxes.

Id. at p. 46.  The magistrate found that issues of fact remain as
to whether Rojas owes Vasarely an additional amount for the 2007-
2008 real estate taxes.   Id.

After independently examining the record, and absent specific
objection by the parties, the Court **ADOPTS** the magistrate judge's
findings that plaintiff Rojas owes defendant Vasarely $84,551.29
for half of the proceeds of the sale and $38,134.87 for back tax
penalties.

Plaintiffs did not raise any specific objection to the
magistrate judge's recommendation.  See Docket No. 387.  Defendant
Vasarely objected, arguing that it is undisputed that Vasarely is
owed an additional $1,000 per an express contractual stipulation
and an additional $27,172.34 for the 2007-2008 real estate taxes.
(Docket No. 367 at pp. 8-9.)  Plaintiffs did not respond to these
arguments in their opposition to defendant Vasarely's objections.
See Docket No. 390.

Both of Vasarely's objections have merit.  Clause 3 of the
contract provides that Rojas "shall pay" defendant Vasarely "for
the real estate taxes paid by [Vasarely] in relation to the Studio
for or during years 2007 and 2008 plus $1,000.00."  (Def.'s Ex. 72

Civil No. 13-1766 (FAB)                                                    24

at ¶ 3.)  First, it is undisputed that plaintiff Rojas owes
defendant Vasarely the $1,000 stipulated in clause 3.  The
magistrate judge mistakenly excluded this undisputed amount from
the damages calculation.  The Court therefore **MODIFIES** the
magistrate judge's recommendation by adding $1,000 to the amount
Rojas owes Vasarely.

Second, it is undisputed that Vasarely made five payments,
summarized in the table below, for real estate taxes on the Chicago
studio.

**TABLE 2**[14]

| No. | Date of Payment | Tax Year | Amount Paid |
|:---:|-----------------|:--------:|------------:|
| **1** | February 25, 2007 | 2006 | $6,419.77 |
| **2** | November 30, 2007 | 2006 | $4,938.02 |
| **3** | March 4, 2008 | 2007 | $5,678.90 |
| **4** | November 3, 2008 | 2007 | $10,135.65 |
| **5** | June 24, 2009 | 2007 | $18,403.67 |

The contract provided that Rojas would reimburse Vasarely for
real estate payments she made "*for or during* years 2007 and 2008."
(Def.'s Ex. 72 at ¶ 3 (emphasis added).)  Vasarely made the first
two payments "during" 2007, and she made the last three payments
"for" tax year 2007.  <u>See</u> Def.'s Ex. 76.  Thus, the plain language

---

[14] <u>See</u> Def.'s Ex. 76 (copies of property tax bills, checks, and a
handwritten note as evidence of these payments); Def.'s Ex. 72 at
pp. 770-79 (plaintiff Rojas's deposition testimony acknowledging
that Vasarely made all five payments, including the two payments
for which Vasarely's only evidence is a handwritten note).

of the contract indicates that the parties intended for Rojas to reimburse Vasarely for all five payments.

This intent is further evidenced by Rojas's statements during his deposition.  Rojas stated that he agreed to reimburse Vasarely for the "two years of taxes" that she paid.  (Docket No. 17 at p. 780.)  The five payments were for two years of taxes: the first two payments were for 2006 taxes and the second three payments were for 2007 taxes.  See Def.'s Ex. 76.  Plaintiff Rojas also acknowledged in his deposition that billing for real estate taxes in Chicago is "very confusing" because the bills "never correspond to the year you are paying."  (Def.'s Ex. 17 at p. 772.)  Indeed, the bills submitted by Vasarely indicate that taxes for "Tax Year 2006" are "Payable in 2007" and that taxes for "Tax Year 2007" are "Payable in 2008."  (Def.'s Ex. 76 at pp. 1-3.)

Finally, it appears that Vasarely made a double payment for 2007 taxes.  That is, she made two installment payments in 2008 for 2007 taxes, but then upon receipt of a bill in 2009 that indicated that $18,403.67 was due on 2007 taxes, she paid that amount.  (Def.'s Ex. 76 at pp. 3-4.)  Plaintiff Rojas acknowledged this, stating in his deposition that he believed a "double payment" had been made, which he had "been trying to recuperate."  (Def.'s Ex. 17 at p. 776.)  This is of no consequence.  Plaintiff Rojas agreed to pay Vasarely for the payments she made for tax year 2007, and

Vasarely made three payments for tax year 2007, so Rojas is liable for reimbursing all three payments.

The Court accordingly **REJECTS** the magistrate judge's finding that issues of fact remain regarding the amount owed to Vasarely for 2007-2008 real estate taxes.  The Court finds that Vasarely paid $45,576.01[15] in real estate taxes "for or during years 2007 and 2008," and that Rojas owes Vasarely this amount.

For the reasons explained above, the Court **GRANTS** defendant Vasarely's motion for summary judgment on her counterclaim for breach of the Chicago studio contract.  Plaintiff Rojas owes defendant Vasarely **$169,262.17**[16] for this counterclaim, and no issues of fact remain.

**H.    Defendant Vasarely's Counterclaim: Chicago Condo**

Defendant Vasarely raised a counterclaim alleging that plaintiff Rojas breached an agreement regarding the sale of real property at 910 S. Michigan Street, Unit 1904, Chicago, Illinois, ("the Chicago condo").  (Docket No. 35 at pp. 37-38.)  Vasarely moved for summary judgment.   (Docket No. 312 at pp. 28-31.)

---

[15]  The total of $45,576.01 is the sum of the following five payments:  $6,419.77,  $4,938.02,  $5,678.90,  $10,135.65,  and $18,403.67.  See supra Table 2.

[16] The total of $169,262.17 is the sum of the following: $84,551.29 for half of the proceeds of the sale of the Chicago studio; $38,134.87 for back tax penalties; $1,000.00 for the stipulated payment in clause 3 of the contract; and $45,576.01 for 2007-2008 real estate taxes.

The magistrate judge recommended that summary judgment be granted in defendant Vasarely's favor and that the "release of memorandum of note" dated April 8, 2013, be declared null and void. (Docket No. 364 at pp. 48-50.)  As for damages, the magistrate judge found no genuine dispute that plaintiff Rojas owes defendant Vasarely for two deductions from the sale proceeds: (1) $27,000 paid to the condo neighbors for water damage; and (2) $18,000 put into an escrow account.  Id. at p. 48.  The magistrate found that issues of fact remain regarding whether Vasarely is owed an additional amount for allegedly underselling the Chicago condo. Id. at pp. 49-50.

After independently examining the record, and absent specific objection by the parties, the Court **ADOPTS** the magistrate judge's recommendation that the "release of memorandum of note" document dated April 8, 2013, be declared null and void.  The Court also **ADOPTS** the magistrate judge's finding that plaintiff Rojas owes defendant Vasarely $18,000 for the money Rojas deducted from the Chicago condo sale proceeds to put into an escrow account.

Plaintiff Rojas raised one objection to the magistrate judge's recommendation, arguing that the $27,000 payment to the condo neighbors for water damage was justified and that he should therefore not be liable for it.  (Docket No. 387 at pp. 7-8.)  The promissory note and memorandum of note provided that Vasarely was entitled to the net proceeds of the sale of the Chicago condo, and

the promissory note defined "net proceeds" as "the gross purchase price of the [Chicago condo] less: (i) usually [*sic*] and customary closing costs and expenses; (ii) broker's commissions; (iii) loan pay-offs; and (iv) usual and customary prorations for real estate taxes and assessments."[17]   <u>See</u> Def.'s Exs. 80A-B.   Payment to a neighbor for water damage does not fall within the narrow group of items Rojas was contractually permitted to deduct from the proceeds. Thus, Rojas's objection that the deduction for water damage was "justified" is unpersuasive, and the Court **ADOPTS** the magistrate judge's finding that Rojas owes Vasarely $27,000 for the money Rojas deducted from the sale proceeds to pay the condo neighbors for water damage.

Defendant Vasarely raised two objections to the magistrate judge's recommendation.  First, she argued that there is no dispute that plaintiff Rojas owes Vasarely an additional $1,000 for the refund Rojas received from the estimate of tax redemption.   The settlement statement for the sale of the Chicago condo reflects that $46,716.28 was deducted from the condo sale proceeds for the estimate of tax redemption.  (Def.'s Ex. 84 at line 1307.)   Rojas later received back $1,000 from this deduction.  (Def.'s Exs. 83A-B.)  Pursuant to the promissory note, the $1,000 constitutes part

---

[17] The magistrate judge's factual finding in this regard contains a drafting error in that its definition of "net proceeds" excludes the phrase: "the gross purchase price of the [Chicago condo] less." <u>See</u> Docket No. 364 at pp. 28-29, ¶ 141.

of the sale's net proceeds and is therefore owed to Vasarely. Although the magistrate judge made factual findings on this issue, (Docket No. 364 at p. 29, ¶ 144), she did not address it in her analysis and recommendation.  The Court therefore **MODIFIES** the magistrate judge's findings by adding $1,000 to the amount Rojas owes Vasarely.

Second, Vasarely argued that Rojas's sale of the Chicago condo without obtaining an appraisal constitutes negligence *per se* and that it is undisputed that she is owed $335,000 for the loss resulting from Rojas's sale of the property for less than it was worth.  (Docket No. 367 at pp. 9-10.)  Vasarely adds the condo's 2004 purchase price ($1,160,000) to the approximate value of the condo's renovations ($250,000) to arrive at $1,410,000 - the amount she concludes was the condo's value when it was sold in 2013.  See Docket No. 312 at pp. 28-31.  Vasarely claims that by selling the condo for $1,075,000, Rojas negligently and in bad faith sold it for $335,000 less than it was worth.  See id.  This evidence leaves a genuine dispute as to whether Rojas sold the Chicago condo for less than it was worth because the value of a piece of real estate is not necessarily equal to its purchase price from a decade prior plus the value of its renovations.  Other factors can affect a property's value.  Defendant Vasarely has thus not met her summary judgment burden.  The Court therefore **REJECTS** the magistrate

judge's recommendation that summary disposition is warranted on this part of Vasarely's counterclaim.

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** defendant Vasarely's motion for summary judgment on her Chicago condo counterclaim.  The Court **GRANTS** summary judgment on the part of Vasarely's counterclaim that alleges that plaintiff Rojas breached the promissory note and memorandum of note by not giving defendant Vasarely the full net proceeds of the sale of the Chicago condo.  The release of memorandum of note dated April 8, 2013, is declared null and void, and plaintiff Rojas owes defendant Vasarely **$46,000**.[18]  The Court **DENIES** summary judgment on the part of Vasarely's counterclaim that alleges that plaintiff Rojas negligently and in bad faith undersold the Chicago condo.

### III.   CONCLUSION

After due consideration, the Court **ADOPTS IN PART, MODIFIES IN PART**, and **REJECTS IN PART** the magistrate judge's findings and recommendations (Docket No. 364).

The Court **GRANTS IN PART** and **DENIES IN PART** defendant Vasarely's motion for partial summary judgment (Docket No. 312) as follows:

---

[18]  The total of $46,000 is the sum of the following: $18,000 for the amount Rojas deducted from the sale proceeds to put into an escrow account; $27,000 for the amount Rojas deducted from the sale proceeds to pay the condo neighbors for water damage; and $1,000 for the amount Rojas received back from the estimate of tax redemption deduction.

1.   **GRANTED** on the parts of Vasarely's breach of the 2010 Artwork Agreement counterclaim that allege that plaintiffs did not give Vasarely 80% of the "base price" for the sales of *Tri-Veg, Zebra*, and *Triton*.  The Court **ORDERS** plaintiff Rojas to give Vasarely the **diamond ring or its value of $16,500**.  The **$312,000** deposited with the Clerk of the Court shall be disbursed to Vasarely.

2.   **GRANTED** on the part of Vasarely's breach of the 2010 Artwork Agreement counterclaim that alleges that plaintiffs did not give Vasarely the full 80% of the sale price of *Gestalt-Rugo*.  The Court **ORDERS** plaintiffs Rojas and Inart Services to give Vasarely **$12,000**.  Whether they owe her more will be determined at trial.

3.   **DENIED** on the parts of Vasarely's breach of the 2010 Artwork Agreement counterclaim that alleges that plaintiffs breached by giving Vasarely 80% of the "base price" instead of 80% of the "sale price" for the Leyba sales and by not returning her artwork after the alleged termination of the agreement.

4.   **DENIED** on plaintiffs' breach of the 2010 Artwork Agreement claim.

5.   **GRANTED** on plaintiffs' two tortious interference claims.  The tortious interference claims are **DISMISSED**.

6.   **GRANTED** on plaintiffs' claim for injunctive relief seeking six certificates of authenticity.  The injunctive relief claim is **DISMISSED AS MOOT.**

7.   **DENIED** on plaintiffs' claim seeking damages related to Vasarely's alleged delay in delivering the certificates of authenticity.

8.   **DENIED** on plaintiffs' claims of defamation and damage to their commercial reputation.

9.   **GRANTED** on plaintiffs' claim of breach of an employment agreement.  The breach of employment agreement claim is **DISMISSED.**

10.  **GRANTED** on Vasarely's counterclaim for breach of the Chicago studio contract.  The Court **ORDERS** Rojas to give Vasarely **$169,262.17** for this counterclaim.

11.   **GRANTED** on the part of Vasarely's breach of the
Chicago condo promissory note and memorandum of note that
alleges that Rojas did not give Vasarely the full net
proceeds of the sale.  The release of memorandum of note
dated April 8, 2013, is declared **NULL AND VOID**, and the
Court **ORDERS** Rojas to give Vasarely **$46,000**.

12.   **DENIED** on the part of Vasarely's breach of the
Chicago condo promissory note and memorandum of note that
alleges that Rojas negligently and in bad faith undersold
the Chicago condo.

There being no just reason for delay, partial judgment shall

be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 7, 2015.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE